UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CONNIE CHERRONE, RICARDO DOMINGUEZ, DENISE ELLIS, THOMAS HOOVER, HAZEL SARMIENTO, THELMA KNIGHTON, HENRY KNIGHTON, VICENT MACIAS, SHAHANNY MACIAS, TRAVIS MARTIN, KATIE MARTIN, DUC TAN NGUYEN, STEPHEN ORTEGA, DALE RISENHOOVER, KRISTA REGO, and JARED STERRITT,<br><br>    Plaintiffs,<br><br>    v.<br><br>FLORSHEIM DEVELOPMENT, a California Corporation; FLORSHEIM PROPERTIES, a California Corporation; ROSE PETALS, LLC, a California Limited Liability Company; ROSE PARK, LLC, a California Limited Liability Company; and DOES 1-300 inclusive,<br><br>    Defendants.<br>_____/ | NO. CIV. 2:12-02069 WBS CKD<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

1

Plaintiff homeowners brought this action against defendants Florsheim Development, Florsheim Properties, Rose Petals, LLC, and Rose Park, LLC, arising from defendants' allegedly wrongful conduct related to the development and sale of homes within a housing subdivision. Currently before the court is defendants' motion to dismiss the Complaint in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).[1]

Plaintiffs are the original purchasers of homes in the Valley Blossom Subdivision ("Subdivision") located in San Joaquin, California. (Compl. ¶ 2 (Docket No. 1).) Defendants are the developer, builder, and sellers of the homes. (Id. ¶¶ 3-6.) Plaintiffs allege that defendants worked with "captive" mortgage, appraisal, and financing companies to manipulate the market value of the homes in the Subdivision to attract buyers and bolster sales. (Id. ¶¶ 18-21.)

Plaintiffs bring claims for: (1) violation of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703; (2) violation of the California Unfair Competition Act, Cal. Bus. & Prof. Code § 17200; (3) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500; (4) rescission under California Civil Code section 1689; (5) violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Cartwright Act,

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

2

1  Cal. Bus. & Prof. Code § 16720; and (6) violation of the
2  Subdivision's CC&R's.  In their Complaint, plaintiffs allege that
3  the court has jurisdiction over this matter pursuant to 28 U.S.C.
4  § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental
5  jurisdiction).  (Compl. ¶ 9.)
6  I.   Discussion
7           Under Federal Rule of Civil Procedure 12(b)(1), a
8  complaint must be dismissed once it is determined that a court
9  lacks subject matter jurisdiction to adjudicate the claims.  Fed.
10 R. Civ. P. 12(b)(1).  The court presumes a lack of jurisdiction
11 until the party asserting jurisdiction proves otherwise, and,
12 once subject matter jurisdiction has been challenged, the burden
13 of proof is placed on the party asserting that jurisdiction
14 exists.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,
15 376 (1994);  Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986)
16 (holding that "the party seeking to invoke the court's
17 jurisdiction bears the burden of establishing that jurisdiction
18 exists").
19      A.   Sherman Act
20           A violation of the Sherman Act ("Act") can only occur
21 when the defendant's business activities are "in restraint of
22 trade or commerce among the several States."  15 U.S.C. § 1.
23 "This requisite relationship to interstate trade or commerce is
24 not only an element of the alleged antitrust offense, but also a
25 necessary jurisdictional requirement."  United States v. ORS,
26 Inc., 997 F.2d 628, 629 (9th Cir. 1993).  A federal court will
27 therefore not have jurisdiction on the basis of the Act "unless
28 the relevant aspect of interstate commerce is identified; it is

3

not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce." McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 242 (1980).

To meet the required showing of interstate commerce, "a plaintiff must show that the activities in question, although conducted within a state, have a 'substantial effect on interstate commerce.'" Freeman v. San Diego Ass'n of Realtors, 322 F.3d 1133, 1143-44 (9th Cir. 2003) (quoting McLain, 444 U.S. at 242). A plaintiff need not demonstrate that the defendant's activities that are alleged to be unlawful had an effect on commerce. Id. at 1143. Rather, a plaintiff need only plead "a substantial effect on interstate commerce generated by respondents' ['infected'] activity." Id. (quoting McLain, 444 U.S. at 242-43).

Nowhere in their Complaint do plaintiffs allege that defendants' activities had any effect on interstate commerce. All the defendant companies are located in California and all the allegations in the Complaint focus on a scheme related to the sale of homes within one subdivision, located in California. Plaintiffs do not allege that the sales had any effect on any housing market outside of California; indeed, defendants are only alleged to have "manipulate[d] the housing market within the . . . Subdivision." (Id. ¶ 24.) Nor do plaintiffs allege any other effect on interstate commerce, such as the sale of homes in the Subdivision turned on interstate financing. Cf. Freeman, 322 F.3d at 1143 (finding that the effect of defendant's mediation of home sales on approximately $10 billion in interstate home-

4

mortgage financing sufficed to show a substantial effect on commerce).

The cases cited by plaintiffs are inapposite. In Allied-Bruce Terminix Cos. v. Dobson, the Supreme Court interpreted the word "involving" in the phrase "a contract evidencing a transaction involving commerce" in the Federal Arbitration Act ("FAA") to be the "functional equivalent of 'affecting'" and stated that the reach of the FAA extends to the full breadth of Congress's power under the Commerce Clause. 513 U.S. 265, 274 (1995). Courts have found the jurisdictional reach of the Sherman Act to be similarly broad. See, e.g., Musick v. Burke, 913 F.2d 1390, 1395 (9th Cir. 1990) ("Congress intended the Sherman Act to be 'as inclusive as the constitutional limits of Congress' power to regulate commerce.'" (quoting Report of the Attorney General's National Committee to Study the Antitrust Laws 62 (1955))). Here, however, there is no dispute over the breadth of the Sherman Act or that defendants' "infected activities" as a whole must substantially affect interstate commerce to be within the Act's reach. Instead, as defendants point out, the problem is that plaintiffs have failed to specifically allege any connection to interstate commerce whatsoever.

In Basura v. U.S. Home Corp., 98 Cal. App. 4th 1205 (2d Dist. 2002), the court considered whether the FAA governed arbitration clauses in sales agreements for residential homes. To show that the contracts at issue involved interstate commerce, the defendant-developer produced declarations stating that construction of the development project involved building material and equipment manufactured and produced in several

5

states, that out-of-state contractors and other professionals were hired for the project, that the defendant communicated by interstate mail and telephone with out-of-state persons concerning the project, and that defendant used interstate media for marketing and advertising activities throughout the country. Id. at 1214. The court found this evidence more than sufficient to meet the requirement that the agreements "involved interstate commerce."[2] Id. The question here is whether plaintiffs have sufficiently alleged the requisite "substantial effect on interstate commerce." Even if the Sherman Act and the FAA's interstate commerce requirements can be met by the same allegations, plaintiffs allegations are insufficient because the Complaint is devoid of any allegations that defendants' activities affect interstate commerce. Accordingly, the court will grant defendants' motion to dismiss plaintiff's claim.

B.   Interstate Land Sales Full Disclosure Act

---

[2] Shepard v. Edward Mackay Enterprises, Inc., 148 Cal. App. 4th 1092 (3d. Dist. 2007), is cited by plaintiff for the proposition that "claims arising out of the land development, home construction, sales, and marketing is, de facto and by legal definition, interstate commerce." (Pls.' Opp'n to Defs.' Mot. to Dismiss at 2:11-13.) In Shepard, the court evaluated defendant's proffered evidence to determine that "the construction of plaintiff's house involved the receipt and use of building materials that were manufactured and/or produced outside California" and that "the number of building materials shown by defendants to have come from interstate commerce indicates this case is not one involving a merely 'trivial' impact on interstate commerce, which would be outside the limits of Congress' power." Id. at 1101. The Shepard court did not hold that the kind of home construction activities conducted by the defendants always implicate interstate commerce. Rather, as in Basura, the court evaluated evidence presented by the defendant that specifically detailed the role of interstate commerce in the transaction. The procedural posture of this case is such that plaintiffs need only allege a substantial effect on interstate commerce. Such allegations must of course be plausible, but plaintiffs have made none.

6

1         The purpose of the Interstate Land Sales Full
2 Disclosure Act ("ILSFDA") is to ensure that buyers of property
3 have the "facts which would enable a reasonably prudent
4 individual to make an informed decision" about the purchase.
5 Gibbes v. Rose Hill Plantation Dev. Co., 794 F. Supp. 1327,
6 1332-33 (D.S.C. 1992).  The ILSFDA provides that "[i]t shall be
7 unlawful for any developer or agent, directly or indirectly, to
8 make use of any means or instruments of transportation or
9 communication in interstate commerce, or of the mails" to engage
10 in specified prohibited acts.  15 U.S.C. § 1703(a).  "Thus, the
11 fulcrum of the Act rests on the use of instrumentalities of
12 transportation of communication in interstate commerce, or of the
13 mails."  Gaudet v. Woodlake Dev. Co., 399 F. Supp. 1005, 1006
14 (E.D. La. 1975).  To invoke the court's subject matter
15 jurisdiction over a claim, therefore, plaintiffs must allege "the
16 required 'interstate nexus.'"  Smith v. Myrtle Owner, LLC, Civ.
17 No. 09-1655 KAM VVP, 2010 WL 2539693, at *4  (E.D.N.Y. June 16,
18 2010); see also Paramo v. IMICO Brickell, LLC, Civ. No. 08-20458,
19 2008 WL 4360609, at *4 (S.D. Fla. Sept. 24, 2008) (finding that
20 allegations of the developer's "use of any means or instruments
21 of transportation or communication in interstate commerce, or of
22 the mails" was required for the Court to exercise jurisdiction
23 under ILSFDA (quoting 15 U.S.C. § 1703(a))).

24         In Gaudet, the defendant-developer moved to dismiss the
25 plaintiff-purchasers' ILSFDA claims.  The court, however, denied
26 the request because a deposition of the defendant revealed that
27 it used both the mails and telephone to promote the development.
28 Id. at 1007.  Likewise, the plaintiff-purchasers in Smith pled

7

the required interstate nexus when they alleged that the defendants "used means or instruments of interstate commerce and the mails." 2010 WL 2539693, at *4.

In contrast, in Paramo, the court granted defendant's motion to dismiss plaintiffs' ILSFDA claims when plaintiffs failed to offer "a single factual allegation with respect to the required interstate nexus," such as "the defendants sent Plaintiffs any solicitation through the mail, faxed or emailed any documents, traveled across state lines, called on the phone, or wired any funds with respect to the sale or lease of the" properties at issue. 2008 WL 4360609 at *6. Plaintiffs here have similarly not offered any factual allegations to support an interstate nexus between the sale of the properties in the Subdivision and interstate commerce. See also Bongratz v. WL Belvidere, Inc., 416 F. Supp. 27, 30 (N.D. Ill. 1976) (allowing plaintiffs to replead claims where they failed to allege "the use of any means or instruments of interstate commerce or the mails" in connection with a sale of real property). And, just like the plaintiffs in Paramo, they "were direct participants in the transactions at issue" and are therefore "well positioned to know how Defendants communicated with them and what, if any, instrumentalities of interstate commerce may have been used between the parties." Paramo, 2008 WL 4360609 at *6. Accordingly, the court will grant defendants' motion to dismiss this claim.

C.   Remaining State-Law Claims

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law

8

claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)."). Factors courts consider in deciding whether to dismiss supplemental state claims include judicial economy, convenience, fairness, and comity. Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th Cir. 1992), abrogated by Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005). "[I]n the usual case in which federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." Reynolds v. Cnty. of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996), overruled on other grounds by Acri, 114 F.3d at 1000.

        Plaintiffs' case has been pending for just over two months, the court has yet to issue a Status (Pretrial Scheduling) Order, and the pending motion is the first that has been filed in the case. As none of the parties raise any extraordinary or unusual circumstances suggesting that the court should retain jurisdiction over plaintiffs' state law claims in the absence of any federal claims, the court will decline to exercise supplemental jurisdiction under § 1367(c)(3) over plaintiffs' state law claims and will accordingly grant defendants' motion to dismiss those claims.

        IT IS THEREFORE ORDERED that defendants' motion to dismiss be, and the same hereby is, GRANTED.

1       Plaintiffs have twenty days from the date of this Order
2  to file an amended complaint, if they can do so consistent with
3  this Order.
4  DATED:    October 11, 2012

                    _____
                    WILLIAM B. SHUBB
                    UNITED STATES DISTRICT JUDGE