1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12  CONNIE CHERRONE, RICARDO              NO. CIV. 2:12-02069 WBS CKD
    DOMINGUEZ, DENISE ELLIS,
13  THOMAS HOOVER, HAZEL
    SARMIENTO, THELMA KNIGHTON,           MEMORANDUM AND ORDER RE:
14  HENRY KNIGHTON, VICENT MACIAS,        MOTION TO DISMISS
    SHAHANNY MACIAS, TRAVIS
15  MARTIN, KATIE MARTIN, DUC TAN
    NGUYEN, STEPHEN ORTEGA, DALE
16  RISENHOOVER, KRISTA REGO, and
    JARED STERRITT,
17
            Plaintiffs,
18
        v.
19
    FLORSHEIM DEVELOPMENT, a
20  California Corporation;
    FLORSHEIM PROPERTIES, a
21  California Corporation; ROSE
    PETALS, LLC, a California
22  Limited Liability Company;
    ROSE PARK, LLC, a California
23  Limited Liability Company; and
    DOES 1-300 inclusive,
24
            Defendants.
25  _____/

26
                            ----oo0oo----
27

28

                               1

1    Plaintiff homeowners brought this action against

2 defendants Florsheim Development, Florsheim Properties, Rose

3 Petals, LLC, and Rose Park, LLC, arising from defendants'

4 allegedly wrongful conduct related to the development and sale of

5 homes within a housing subdivision.  Currently before the court

6 is defendants' motion to dismiss the Complaint in its entirety

7 for lack of subject matter jurisdiction pursuant to Federal Rule

8 of Civil Procedure 12(b)(1) and, in the alternative, for failure

9 to state a claim upon which relief can be granted pursuant to

10 Rule 12(b)(6).[1]

11    Plaintiffs are the original purchasers of homes in the

12 Valley Blossom Subdivision ("Subdivision") located in San

13 Joaquin, California.  (Compl. ¶ 2 (Docket No. 1).)  Defendants

14 are the developer, builder, and sellers of the homes.  (Id. ¶¶ 3-

15 6.)  Plaintiffs allege that defendants worked with "captive"

16 mortgage, appraisal, and financing companies to manipulate the

17 market value of the homes in the Subdivision to attract buyers

18 and bolster sales.  (Id. ¶¶ 18-21.)

19    Plaintiffs bring claims for: (1) violation of the

20 Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703; (2)

21 violation of the California Unfair Competition Act, Cal. Bus. &

22 Prof. Code § 17200; (3) violation of the California False

23 Advertising Law, Cal. Bus. & Prof. Code § 17500; (4) rescission

24 under California Civil Code section 1689; (5) violation of the

25 Sherman Antitrust Act, 15 U.S.C. § 1, and the Cartwright Act,

26

27    [1]   Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
28 E.D. Cal. L.R. 230(g).

1   Cal. Bus. & Prof. Code § 16720; and (6) violation of the

2   Subdivision's CC&R's.  In their Complaint, plaintiffs allege that

3   the court has jurisdiction over this matter pursuant to 28 U.S.C.

4   § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental

5   jurisdiction).  (Compl. ¶ 9.)

6   I.   Discussion

7           Under Federal Rule of Civil Procedure 12(b)(1), a

8   complaint must be dismissed once it is determined that a court

9   lacks subject matter jurisdiction to adjudicate the claims.  Fed.

10  R. Civ. P. 12(b)(1).  The court presumes a lack of jurisdiction

11  until the party asserting jurisdiction proves otherwise, and,

12  once subject matter jurisdiction has been challenged, the burden

13  of proof is placed on the party asserting that jurisdiction

14  exists.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,

15  376 (1994);  Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986)

16  (holding that "the party seeking to invoke the court's

17  jurisdiction bears the burden of establishing that jurisdiction

18  exists").

19       A.   Sherman Act

20          A violation of the Sherman Act ("Act") can only occur

21  when the defendant's business activities are "in restraint of

22  trade or commerce among the several States."  15 U.S.C. § 1.

23  "This requisite relationship to interstate trade or commerce is

24  not only an element of the alleged antitrust offense, but also a

25  necessary jurisdictional requirement."  United States v. ORS,

26  Inc., 997 F.2d 628, 629 (9th Cir. 1993).  A federal court will

27  therefore not have jurisdiction on the basis of the Act "unless

28  the relevant aspect of interstate commerce is identified; it is

3

1  not sufficient merely to rely on identification of a relevant

2  local activity and to presume an interrelationship with some

3  unspecified aspect of interstate commerce."  McLain v. Real

4  Estate Bd. of New Orleans, Inc., 444 U.S. 232, 242 (1980).

5        To meet the required showing of interstate commerce, "a

6  plaintiff must show that the activities in question, although

7  conducted within a state, have a 'substantial effect on

8  interstate commerce.'"  Freeman v. San Diego Ass'n of Realtors,

9  322 F.3d 1133, 1143-44 (9th Cir. 2003) (quoting McLain, 444 U.S.

10 at 242).  A plaintiff need not demonstrate that the defendant's

11 activities that are alleged to be unlawful had an effect on

12 commerce.  Id. at 1143.  Rather, a plaintiff need only plead "a

13 substantial effect on interstate commerce generated by

14 respondents' ['infected'] activity."  Id. (quoting McLain, 444

15 U.S. at 242-43).

16        Nowhere in their Complaint do plaintiffs allege that

17 defendants' activities had any effect on interstate commerce.

18 All the defendant companies are located in California and all the

19 allegations in the Complaint focus on a scheme related to the

20 sale of homes within one subdivision, located in California.

21 Plaintiffs do not allege that the sales had any effect on any

22 housing market outside of California; indeed, defendants are only

23 alleged to have "manipulate[d] the housing market within the . .

24 . Subdivision."  (Id. ¶ 24.)  Nor do plaintiffs allege any other

25 effect on interstate commerce, such as the sale of homes in the

26 Subdivision turned on interstate financing.  Cf. Freeman, 322

27 F.3d at 1143 (finding that the effect of defendant's mediation of

28 home sales on approximately $10 billion in interstate home-

4

mortgage financing sufficed to show a substantial effect on commerce).

The cases cited by plaintiffs are inapposite.  In Allied-Bruce Terminix Cos. v. Dobson, the Supreme Court interpreted the word "involving" in the phrase "a contract evidencing a transaction involving commerce" in the Federal Arbitration Act ("FAA") to be the "functional equivalent of 'affecting'" and stated that the reach of the FAA extends to the full breadth of Congress's power under the Commerce Clause.  513 U.S. 265, 274 (1995).  Courts have found the jurisdictional reach of the Sherman Act to be similarly broad.  See, e.g., Musick v. Burke, 913 F.2d 1390, 1395 (9th Cir. 1990)  ("Congress intended the Sherman Act to be 'as inclusive as the constitutional limits of Congress' power to regulate commerce.'" (quoting Report of the Attorney General's National Committee to Study the Antitrust Laws 62 (1955))).  Here, however, there is no dispute over the breadth of the Sherman Act or that defendants' "infected activities" as a whole must substantially affect interstate commerce to be within the Act's reach.  Instead, as defendants point out, the problem is that plaintiffs have failed to specifically allege any connection to interstate commerce whatsoever.

In Basura v. U.S. Home Corp., 98 Cal. App. 4th 1205 (2d Dist. 2002), the court considered whether the FAA governed arbitration clauses in sales agreements for residential homes. To show that the contracts at issue involved interstate commerce, the defendant-developer produced declarations stating that construction of the development project involved building material and equipment manufactured and produced in several

states, that out-of-state contractors and other professionals were hired for the project, that the defendant communicated by interstate mail and telephone with out-of-state persons concerning the project, and that defendant used interstate media for marketing and advertising activities throughout the country. Id. at 1214.  The court found this evidence more than sufficient to meet the requirement that the agreements "involved interstate commerce."[2]  Id.  The question here is whether plaintiffs have sufficiently alleged the requisite "substantial effect on interstate commerce."  Even if the Sherman Act and the FAA's interstate commerce requirements can be met by the same allegations, plaintiffs allegations are insufficient because the Complaint is devoid of <u>any</u> allegations that defendants' activities affect interstate commerce.  Accordingly, the court will grant defendants' motion to dismiss plaintiff's claim.

     B.   <u>Interstate Land Sales Full Disclosure Act</u>

---

    [2]    <u>Shepard v. Edward Mackay Enterprises, Inc.</u>, 148 Cal. App. 4th 1092 (3d. Dist. 2007), is cited by plaintiff for the proposition that "claims arising out of the land development, home construction, sales, and marketing is, de facto and by legal definition, interstate commerce."  (Pls.' Opp'n to Defs.' Mot. to Dismiss at 2:11-13.)  In <u>Shepard</u>, the court evaluated defendant's proffered evidence to determine that "the construction of plaintiff's house involved the receipt and use of building materials that were manufactured and/or produced outside California" and that "the number of building materials shown by defendants to have come from interstate commerce indicates this case is not one involving a merely 'trivial' impact on interstate commerce, which would be outside the limits of Congress' power."  <u>Id.</u> at 1101.  The <u>Shepard</u> court did not hold that the kind of home construction activities conducted by the defendants always implicate interstate commerce.  Rather, as in <u>Basura</u>, the court evaluated evidence presented by the defendant that specifically detailed the role of interstate commerce in the transaction.  The procedural posture of this case is such that plaintiffs need only allege a substantial effect on interstate commerce.  Such allegations must of course be plausible, but plaintiffs have made none.

1    The purpose of the Interstate Land Sales Full

2    Disclosure Act ("ILSFDA") is to ensure that buyers of property

3    have the "facts which would enable a reasonably prudent

4    individual to make an informed decision" about the purchase.

5    <u>Gibbes v. Rose Hill Plantation Dev. Co.</u>, 794 F. Supp. 1327,

6    1332-33 (D.S.C. 1992).  The ILSFDA provides that "[i]t shall be

7    unlawful for any developer or agent, directly or indirectly, to

8    make use of any means or instruments of transportation or

9    communication in interstate commerce, or of the mails" to engage

10   in specified prohibited acts.  15 U.S.C. § 1703(a).  "Thus, the

11   fulcrum of the Act rests on the use of instrumentalities of

12   transportation of communication in interstate commerce, or of the

13   mails."  <u>Gaudet v. Woodlake Dev. Co.</u>, 399 F. Supp. 1005, 1006

14   (E.D. La. 1975).  To invoke the court's subject matter

15   jurisdiction over a claim, therefore, plaintiffs must allege "the

16   required 'interstate nexus.'"  <u>Smith v. Myrtle Owner, LLC</u>, Civ.

17   No. 09-1655 KAM VVP, 2010 WL 2539693, at *4  (E.D.N.Y. June 16,

18   2010); <u>see also</u> <u>Paramo v. IMICO Brickell, LLC</u>, Civ. No. 08-20458,

19   2008 WL 4360609, at *4 (S.D. Fla. Sept. 24, 2008) (finding that

20   allegations of the developer's "use of any means or instruments

21   of transportation or communication in interstate commerce, or of

22   the mails" was required for the Court to exercise jurisdiction

23   under ILSFDA (quoting 15 U.S.C. § 1703(a))).

24        In <u>Gaudet</u>, the defendant-developer moved to dismiss the

25   plaintiff-purchasers' ILSFDA claims.  The court, however, denied

26   the request because a deposition of the defendant revealed that

27   it used both the mails and telephone to promote the development.

28   <u>Id.</u> at 1007.  Likewise, the plaintiff-purchasers in <u>Smith</u> pled

7

the required interstate nexus when they alleged that the defendants "used means or instruments of interstate commerce and the mails."  2010 WL 2539693, at *4.

In contrast, in <u>Paramo</u>, the court granted defendant's motion to dismiss plaintiffs' ILSFDA claims when plaintiffs failed to offer "a single factual allegation with respect to the required interstate nexus," such as "the defendants sent Plaintiffs any solicitation through the mail, faxed or emailed any documents, traveled across state lines, called on the phone, or wired any funds with respect to the sale or lease of the" properties at issue.  2008 WL 4360609 at *6.  Plaintiffs here have similarly not offered any factual allegations to support an interstate nexus between the sale of the properties in the Subdivision and interstate commerce.  <u>See also</u> <u>Bongratz v. WL Belvidere, Inc.</u>, 416 F. Supp. 27, 30 (N.D. Ill. 1976) (allowing plaintiffs to replead claims where they failed to allege "the use of any means or instruments of interstate commerce or the mails" in connection with a sale of real property).  And, just like the plaintiffs in <u>Paramo</u>, they "were direct participants in the transactions at issue" and are therefore "well positioned to know how Defendants communicated with them and what, if any, instrumentalities of interstate commerce may have been used between the parties."  <u>Paramo</u>, 2008 WL 4360609 at *6. Accordingly, the court will grant defendants' motion to dismiss this claim.

C.   <u>Remaining State-Law Claims</u>

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law

8

1    claims if "the district court has dismissed all claims over which

2    it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see also

3    Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997)

4    ("[A] federal district court with power to hear state law claims

5    has discretion to keep, or decline to keep, them under the

6    conditions set out in § 1367(c).").  Factors courts consider in

7    deciding whether to dismiss supplemental state claims include

8    judicial economy, convenience, fairness, and comity.

9    Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th

10   Cir. 1992), abrogated by Diaz v. Gates, 420 F.3d 897, 900 (9th

11   Cir. 2005).  "[I]n the usual case in which federal law claims are

12   eliminated before trial, the balance of factors . . . will point

13   toward declining to exercise jurisdiction over the remaining

14   state law claims."  Reynolds v. Cnty. of San Diego, 84 F.3d 1162,

15   1171 (9th Cir. 1996), overruled on other grounds by Acri, 114

16   F.3d at 1000.

17          Plaintiffs' case has been pending for just over two

18   months, the court has yet to issue a Status (Pretrial Scheduling)

19   Order, and the pending motion is the first that has been filed in

20   the case.  As none of the parties raise any extraordinary or

21   unusual circumstances suggesting that the court should retain

22   jurisdiction over plaintiffs' state law claims in the absence of

23   any federal claims, the court will decline to exercise

24   supplemental jurisdiction under § 1367(c)(3) over plaintiffs'

25   state law claims and will accordingly grant defendants' motion to

26   dismiss those claims.

27          IT IS THEREFORE ORDERED that defendants' motion to

28   dismiss be, and the same hereby is, GRANTED.

9

1          Plaintiffs have twenty days from the date of this Order

2 to file an amended complaint, if they can do so consistent with

3 this Order.

4 DATED:    October 11, 2012

5

6                                         _____

7                     WILLIAM B. SHUBB
                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28