UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CONNIE CHERRONE, RICARDO DOMINGUEZ, DENISE ELLIS, THOMAS HOOVER, HAZEL SARMIENTO, THELMA KNIGHTON, HENRY KNIGHTON, VICENT MACIAS, SHAHANNY MACIAS, TRAVIS MARTIN, KATIE MARTIN, DUC TAN NGUYEN, STEPHEN ORTEGA, DALE RISENHOOVER, KRISTA REGO, and JARED STERRITT,<br><br>            Plaintiffs,<br><br>    v.<br><br>FLORSHEIM DEVELOPMENT, a California Corporation; FLORSHEIM PROPERTIES, a California Corporation; ROSE PETALS, LLC, a California Limited Liability Company; ROSE PARK, LLC, a California Limited Liability Company; and DOES 1-300 inclusive,<br><br>            Defendants.<br>_____/ | NO. CIV. 2:12-02069 WBS CKD<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiff homeowners brought this action against defendants Florsheim Development, Florsheim Properties, Rose

1

Petals, LLC, and Rose Park, LLC, arising from defendants' allegedly wrongful conduct related to the development and sale of homes within a housing subdivision.  Currently before the court is defendants' motion to dismiss the First Amended Complaint ("FAC") in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

I.   Factual and Procedural Background

Plaintiffs are the original purchasers of homes in the Valley Blossom Subdivision ("Subdivision") located in San Joaquin, California.  (First Am. Compl. ¶ 2 ("FAC") (Docket No. 1).)  Defendants are the developer, builder, and sellers of the homes.  (Id. ¶¶ 3-6.)  Plaintiffs allege that defendants conspired with "captive" mortgage, appraisal, and financing companies to manipulate the market value of the homes in the Subdivision to attract buyers and bolster sales.  (Id. ¶¶ 18-21.)  Plaintiffs further allege that defendants "tied" the sale of homes to financing with the captive lenders, (id. ¶¶ 23-24, 30, 42), and that defendants misrepresented the value of homes to buyers as well as the stability of the market in the neighborhood, (id. ¶¶ 36-41).

Defendants brought a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, failure to state a claim under Rule 12(b)(6).  (Docket No. 9.)  The court granted defendants' motion, dismissing the federal claims in the Complaint for lack of subject matter jurisdiction and declining to exercise supplemental jurisdiction on the remaining state law claims.  (Docket No. 12.)  Plaintiffs

2

filed the FAC on October 17, 2012.  (Docket No. 13.)

In the FAC, plaintiffs bring claims for: (1) violation of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703; (2) violation of the California Unfair Competition Act, Cal. Bus. & Prof. Code § 17200; (3) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500; (4) rescission under California Civil Code section 1689; (5) violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and the Cartwright Act, Cal. Bus. & Prof. Code § 16720; and (6) violation of the Subdivision's CC&R's.

Defendants now move to dismiss all claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

II. Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).  In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v.

3

1  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322
2  (1972).
3      A.   Dismissal Due to Arbitration
4          Defendants first argue that all claims are subject to
5  an arbitration clause contained in the homeowners' purchase
6  agreements.  In support of their motion, defendants submit ten
7  exhibits for the court's consideration.  (See Florsheim Decl.
8  Exs. A-J (Docket No. 14).)  Each exhibit includes two documents:
9  (1) a Purchase Agreement signed by the respective plaintiffs that
10 contains an dispute resolution clause; and (2) the 2-10 Home
11 Buyers Warranty Booklet ("Warranty Booklet"), which defendants
12 represent is a copy of the arbitration provisions incorporated by
13 reference in the dispute resolution clause of the Purchase
14 Agreements.  (Id. ¶¶ 2-11.)
15         While a court generally may look only to the complaint
16 and any attached exhibits on a Rule 12(b)(6) motion to dismiss,
17 the court "may also consider unattached evidence on which the
18 complaint 'necessarily relies' if: (1) the complaint refers to
19 the document; (2) the document is central to the plaintiff's
20 claim; and (3) no party questions the authenticity of the
21 document."  United States v. Corinthian Colleges, 655 F.3d 984,
22 999 (9th Cir. 2011) (citing Marder v. Lopez, 450 F.3d 445, 448
23 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 688
24 (9th Cir. 2001)).
25         Plaintiffs vigorously dispute the authenticity of the
26 attached Warranty Booklet and indicate that the terms of the
27 attached Warranty Booklet are unconscionable under California
28 law.  Factual development would be needed to determine what

4

arbitration or dispute resolution process, if any, plaintiffs consented to in the Purchase Agreements and whether that process is enforceable.  Thus, the court cannot find that plaintiffs entered into a valid arbitration agreement on the basis of the submitted documents.  See id. (noting that the court could consider the existence of disputed reports referenced in the complaint, but could not "draw inferences or take notice of facts that might reasonably be disputed" when there "are open questions requiring further factual development").

Although the FAC alleges that plaintiffs entered into arbitration agreements, (see FAC ¶ 15(e)), it does not disclose the scope of the claims subject to arbitration.  See Kilgore v. KeyBank, Nat. Ass'n, 673 F.3d 947, 955 (9th Cir. 2012) ("'The court's role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).  Thus, the court will not dismiss plaintiffs' claims as arbitrable or stay the action pending arbitration at this time.[1]

---

[1] The court also declines to convert defendants' motion under Rule 12(b)(6) into a motion for summary judgment.  See Fed. R. Civ. P. 12(d).  The court's ruling on defendants' motion to dismiss under Rule 12(b)(6) does not, however, preclude defendants from bringing a motion to stay the case or compel arbitration.  See 9 U.S.C. §§ 3-4 (providing for motions to stay the case or compel arbitration under the Federal Arbitration Act ("FAA")).  These motions would permit the court to consider evidence outside the complaint.  See, e.g., Guadagno v. E*Trade Bank, 592 F. Supp. 2d 1263, 1266-69 (C.D. Cal. 2008) (examining declarations and exhibits in ruling on a motion to compel arbitration under the FAA).

5

1          B.   Interstate Land Sales Full Disclosure Act

2               In their first claim for relief, plaintiffs allege a violation of the Interstate Land Sales Full Disclosure Act ("ILSFDA"). The ILSFDA is "designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778 (1976). The ILSFDA's anti-fraud provision makes it unlawful for any developer or an agent to use the means or instruments of interstate commerce or of the mails, with respect to the sale or offer to sell any lot,

> (A) to employ any device, scheme, or artifice to defraud; (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision; [or] (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser . . . .

15 U.S.C. § 1703(a)(2).

        Plaintiffs allege that defendants "implemented a scheme to manipulate the housing market" by falsely promising to refund the difference between the price paid for a home and the current market value at year's end, by misrepresenting the stability of the market in the neighborhood, by marketing to and approving financing for unqualified buyers, and by promising but failing to build facilities in the neighborhood. (FAC ¶¶ 25-27, 32-34, 38, 43-48.) Their claims under § 1703(a)(2) thus sound in fraud and are therefore subject to the heightened pleading standard of Rule 9(b). See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04

6

(9th Cir. 2003) (holding that when a plaintiff alleges a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct for the basis of a claim," the "claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)"); see also Degirmenci v. Sapphire-Fort Lauderdale, LLLP, 693 F. Supp. 2d 1325, 1341-43 (S.D. Fla. 2010) (noting that a plaintiff's claim under § 1703(a)(2) sounded in fraud and thus required particularity in pleading under Rule 9(b)).

Under Federal Rule of Civil Procedure 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F3d. 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

While "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant," a plaintiff cannot "lump defendants together" in the complaint. Swartz v. KPMG, LLC, 476 F.3d 756, 764 (9th Cir. 2007) (emphasis omitted). Rather, "[i]n

7

the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" Id. at 765 (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989)) (alterations in original).

In support of their claim, plaintiffs only broadly allege that defendants made false statements about the development of the subdivision that were included in "sales brochures and fliers, model home displays, and sales advertisements," (FAC ¶ 46), as well as "a printed property report and other advertising," (id. ¶ 58). They also allege that defendants made false promises to refund the difference in price between a home at purchase and at year's end. (Id. at ¶ 25.) Yet plaintiffs fail to identify which defendant made the allegedly false statements, the time and place of the statements, and the specifics of the statements. Plaintiffs' allegations are not specific enough to allow defendants to prepare an adequate defense. The FAC is also "shot through with general allegations that 'defendants' engaged in fraudulent conduct," Swartz, 476 F.3d 756, but fails to attribute specific misconduct to any particular defendant.[2]

---

[2] Plaintiffs argue that they have sufficiently pled an alter ego theory of liability and thus may "link the specific bad acts of one Defendant to the other Defendants." (Pls.' Opp'n at 10-11 (Docket No. 16).) Plaintiffs, however, fail to allege any "specific bad acts" at all.
 To the extent plaintiffs wish to impose liability on all defendants for the acts of one defendant, plaintiffs' allegations that defendants are alter egos of one another are insufficient. "Before the doctrine [of alter ego liability] may be invoked, two elements must be alleged: 'First, there must be such a unity of interest and ownership between the corporation

8

Plaintiffs therefore fail to plead their § 1703(A)(2) claim with the requisite particularity under Rule 9(b). Accordingly, their first claim for relief will be dismissed.

C. Sherman Act

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. In their fifth claim for relief, plaintiffs allege that defendants "tied" home sales to financing through Guild Mortgage and other "captive" lenders. (FAC ¶¶ 16, 23-24, 26, 29-30, 42, 76-84.)[3]

---

and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.'" Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) (quoting Sonora Diamond Corp. v. Sup. Ct., 83 Cal. App. 4th 523, 526 (5th Dist. 2000)). "'[O]nly a difference in wording is used in stating the . . . concept where the entity sought to be held liable is another corporation instead of an individual.'" Id. (quoting Las Palmas Asscs. v. Las Palmas Ctr. Asscs., 235 Cal. App. 3d 1220, 1249 (2d Dist. 1991)) (alterations in the original).

"Conclusory allegations of 'alter ego' status are insufficient . . . ." Id. "Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." Id. As for the first element, plaintiffs allege that defendants shared the same office space, but fail to allege facts as to other factors, including commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, or identical equitable ownership in the two entities. See Wady v. Provident Life & Accident Ins. Co. of Am., 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) (listing factors). Under the second element, plaintiffs do not allege facts to show, for example, bad faith in acquisition and/or management, inadequate initial capitalization, or the draining of corporate assets after capitalization. See Neilson, 290 F. Supp. 2d at 1117-18.

[3] All factual allegations implicated in the fifth claim for relief involve the alleged "tie" between purchasing a house and obtaining financing through Guild Mortgage or other mortgage

9

"A tying arrangement is a device used by a seller with market power in one product market to extend its market power to a distinct product market." Rick-Mik Enters., Inc. v. Equilon Enters. LLC, 532 F.3d 963, 971 (9th Cir. 2008) (quoting Cascade Health Solutions v. PeaceHealth, 515 F.3d 883, 912 (9th Cir. 2008)). "To accomplish this objective, the seller conditions the sale of one product (the tying product) on the buyer's purchase of a second product (the tied product)." Id. "Tying arrangements are forbidden on the theory that, if the seller has market power over the tying product, the seller can leverage this market power through tying arrangements to exclude other sellers of the tied product." Id.

"Tying can be either a per se violation or a violation under the rule of reason."[4] Cnty. of Tuolumne v. Sonora Comm.

---

companies. If plaintiffs have attempted to allege a separate conspiracy in restraint of trade between defendants and Guild Mortgage, such as price-fixing, any such allegations are insufficient. See Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level," which "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."); Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008) ("[T]o allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." (quoting Twombly, 550 U.S. at 565 n.10)); Rick-Mik Enters. Inc. v. Equilon Enters., LLC, 532 F.3d 963, 976 (9th Cir. 2008) (dismissing alleged price-fixing conspiracy where "the co-conspirator banks or financial institutions are not mentioned," "[t]he nature of the conspiracy or agreement is not alleged," "[t]he type of agreements are not alleged," and "[t]he discernible theories do not implicate antitrust laws").

[4] Plaintiffs assert only that their claims satisfy the per se test for illegal tying. They do not argue that the FAC states a claim under the rule of reason, thus the court will only address the per se rule. See Foremost Pro Color, Inc. v. Eastman

10

1   Hosp., 236 F.3d 1148, 1157 (9th Cir. 2001).  "For a tying claim
2   to suffer per se condemnation, a plaintiff must prove: (1) that
3   the defendant tied together the sale of two distinct products or
4   services; (2) that the defendant possesses enough economic power
5   in the tying product market to coerce its customers into
6   purchasing the tied product, and (3) that the tying arrangement
7   affects a 'not insubstantial volume of commerce' in the tied
8   product market."  Rick-Mik Enters., 532 F.3d at 971 (quoting
9   Cascade Health, 515 F.3d at 913).

10           "Not all tying arrangements are illegal.  Rather, ties
11  are prohibited where a seller 'exploits,' 'controls,' 'forces,'
12  or 'coerces,' a buyer of a tying product into purchasing a tied
13  product."  Id. at 971.  "[M]ere and incidental sales pressure
14  does not constitute coercion."  Paladin Asscs., Inc. v. Mont.
15  Power Co., 328 F.3d 1145, 1160 (9th Cir. 2003).

16           Plaintiffs allege that defendants tied housing sales to
17  financing through Guild Mortgage and other captive lenders by
18  "steer[ing], but most often mandat[ing]," or otherwise
19  "wrongfully conditioning, either by mandate or by empty
20  incentives," that home buyers obtain financing through these
21  lenders.  (FAC ¶¶ 16, 23, 42, 78, 80.)  Plaintiffs, however, fail
22  to allege facts indicating that any of them purchased or obtained
23  the tied product (financing through Guild Mortgage or another
24  "captive" lender).  See Strawflower Elecs., Inc. v. Radioshack

---

26  Kodak Co., 703 F.2d 534, 541 (9th Cir. 1983) ("[The plaintiff]
    has not challenged the alleged tying under the rule of reason.
27  Thus, the dispositive question before us is whether, under the
    per se rule, [the plaintiff] adequately pleaded the requisite
28  coercion in its complaint.").

11

Corp., Civ. No. 05-0747 MMC, 2005 WL 2290314, at *8-9 (N.D. Cal. Sept. 20, 2005) (dismissing plaintiff's tying claim for failure to allege actual purchase in the tied market).  In addition, besides offering broad and conclusory statements, plaintiffs make no allegations as to how defendants "steered" or "mandated" that plaintiffs obtain financing through Guild or another lender. See Nicolosi Dist., Inc. v. BMW N. Am., LLC, Civ. No. 10-3256 SI, 2011 WL 479993, at *3 (N.D. Cal. Feb. 7, 2011) (dismissing a state-law tying violation under the Cartwright Act when plaintiff simply alleged that defendant "forced" the plaintiff into buying paint, without clearly alleging "the source of coercion").  Therefore plaintiffs fail to adequately allege that plaintiffs tied homes sales to financing under the first element of the per se rule.[5]

Accordingly, since plaintiffs fail to satisfy even the first of three elements of a per se tying violation, plaintiffs' fifth claim for relief under the Sherman Act will be dismissed.

D.  Remaining State Law Claims

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997)

---

[5] Defendants argue that plaintiffs' tying claim also fails under the second element of the per se rule because any market power in the tying market is derived from the contractual relationship between the parties.  (Defs.' Reply at 10-11 (Docket No. 18).)  However, since plaintiffs fail to allege how the products were tied in the first place, whether through contractual arrangement or otherwise, the court will not address defendants' argument at this time.

12

1   ("[A] federal district court with power to hear state law claims
2   has discretion to keep, or decline to keep, them under the
3   conditions set out in § 1367(c)."). Factors courts consider in
4   deciding whether to dismiss supplemental state claims include
5   judicial economy, convenience, fairness, and comity.
6   Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th
7   Cir. 1992), abrogated by Diaz v. Gates, 420 F.3d 897, 900 (9th
8   Cir. 2005). "[I]n the usual case in which federal law claims are
9   eliminated before trial, the balance of factors . . . will point
10  toward declining to exercise jurisdiction over the remaining
11  state law claims." Reynolds v. Cnty. of San Diego, 84 F.3d 1162,
12  1171 (9th Cir. 1996), overruled on other grounds by Acri, 114
13  F.3d at 1000.

14          The court has yet to issue a Status (Pretrial
15  Scheduling) Order and the pending motion is only the second that
16  has been filed in the case. As none of the parties raise any
17  extraordinary or unusual circumstances suggesting that the court
18  should retain jurisdiction over plaintiffs' state law claims in
19  the absence of any federal claims, the court will decline to
20  exercise supplemental jurisdiction under § 1367(c)(3) over
21  plaintiffs' state law claims and will accordingly grant
22  defendants' motion to dismiss those claims.

23          IT IS THEREFORE ORDERED that defendants' motion to
24  dismiss be, and the same hereby is, GRANTED.

25          Plaintiffs have twenty days from the date of this Order
26  ///
27  ///
28  ///

13

to file a second amended complaint, if they can do so consistent with this Order.

DATED:  December 4, 2012

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14